## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  09-20133 |
| | ) | |
| GLADSTONE MCDOWELL | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Defendant Gladstone McDowell was convicted by a jury of five counts: conspiracy to distribute and possess with intent to distribute marijuana; continuing criminal enterprise of distributing and possessing marijuana with the intent to distribute; conspiracy to commit money laundering; money laundering; and attempted possession with intent to distribute marijuana.  Mr. McDowell has filed numerous post-trial motions, including:

- Doc. 990 (identical to Doc. 1013) – Motion for judgment of acquittal

- Doc. 991 (identical to Doc. 1012) – Motion to Set Aside Judgment; Motion for new trial

- Doc. 1021 – Motion to Arrest Judgment, Government's Failure to Prove Venue

- Doc. 1022 – Motion to Arrest Judgment for Lack of Jurisdiction

- Doc. 1037 – Motion to Arrest Judgment for Lack of DOJ Jurisdiction

- Doc. 1085 – Judicial Notice of Witness to "Treason" and Pending Impeachment Proceeding

- Doc. 1086 – Motion to Recuse Judge Lungstrum

- Doc. 1088 – Motion to Dismiss for Lack of Territorial Jurisdiction

- Doc. 1089 – Constitutional Challenge to a Statute Certification

- Doc. 1090 – Motion to Appeals [sic] Forfeiture

- Doc. 1115 – Motion to Amend Appeals for Forfeiture

For the reasons discussed.  All of these motions are denied.

## DISCUSSION

For the most part, Mr. McDowell raises issues that he has previously argued to the court and on which the court has already ruled, and he neglects to raise any new argument that would alter the court's previous decisions.  Additionally, the issues tend to overlap among his various post-trial motions.  For that reason, the court will address Mr. McDowell's motions by topic.

## 1.    Indictment

Mr. McDowell suggests that his conviction must be overturned because of defects in the indictment.  Specifically, he argues that it was not properly signed by the Government attorney and that it does not contain a seal.  This court has previously concluded that the electronic signature of the government attorney satisfies the requirements of Rule 7(c)(1).  (Doc. 981, at 2.)  Moreover, Mr. McDowell continues to lack authority for his contention that the indictment needs to include a "seal" of some

2

kind.  (Doc. 981, at 2.)

Mr. McDowell does raise one new challenge to the indictment.  He argues, for the first time here, that the foreperson of the grand jury failed to sign the indictment.  Both the original indictment (doc. 1) and the superceding indictment (doc. 497) contain "s/Foreperson" on the Foreperson signature line.  Given that local rules permits "s/" electronic signatures, D. Kan. Rule 5.4.8(c), Mr. McDowell has failed to establish a violation of Rule 6(c) of the Federal Rules of Criminal Procedure.  That rule provides that "[t]he court will appoint one juror as the foreperson and another as the deputy foreperson" and that "[t]he foreperson . . . will sign all indictments."  Rule 6(c) does not require the signature of the foreperson to appear on the copy of the indictment that is placed in the public file.  Moreover, even if that rule, or some other authority did impose such a requirement, Mr. McDowell has failed to establish that overturning his convictions would be an appropriate remedy.  *See Hobby v. United States*, 468 U.S. 339, 345 (1984). ("Even the foreman's duty to sign the indictment is a formality, for the absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the indictment.").

## 2.   Title 21 Certification

Mr. McDowell contends that his conviction should be overturned because the Government never produced the "certification" of Title 21 as a valid law.  The court thoroughly addressed, and rejected, this argument in a previous order (doc. 668). Moreover, the Tenth Circuit noted the argument concerning Title 21's certification, and

agreed with this court's determination that it was meritless. *In re: Blackburn*, No. 11-3061, Doc. 01018611419 (Mar. 28, 2011).

**3.     Jurisdiction**

Mr. McDowell raises several challenges to the jurisdiction of this court to hear his case and of the Government to prosecute him.  He suggests that this court only has jurisdiction to hear cases that occurred in Washington, D.C. or on land purchased by the federal government, or only civil or maritime cases.  He maintains that the Government lacks jurisdiction to charge him with crimes.

The court has previously explained in detail the source of its jurisdiction to hear criminal cases.  (Doc. 564, at 10; Doc. 565, at 2-5.)  Mr. McDowell has identified no new authorities or arguments that would cause the court to deviate from its prior conclusions on jurisdiction.

**4.     Complaint**

Mr. McDowell argues that his conviction should be overturned because the Government failed to file a complaint in this case.  As this court has previously ruled, however, because the grand jury returned an indictment based on probable cause found during grand jury proceedings, no complaint was necessary.  (Doc. 564, at 5-7; Doc. 565, at 8.)

**5.     Fair Trial**

In his motion for a new trial (docs. 991 & 1012), Mr. McDowell  asserts that his trial "was one-sided and everything was in favor of the prosecution" because the court

4

and the Government placed "too much burden" on him.  He contends that he was not allowed to present witnesses or talk about the constitution or Title 21.

Federal Rule of Criminal Procedure 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P.  33.  "A motion for a new trial is not regarded with favor and is only issued with great caution." *United States v. Herrera*, 481 F.3d 1266, 1269-70 (10th Cir. 2007) (citing *United States v. Trujillo*, 136 F.3d 1388, 1394 (10th Cir. 1998)). The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court. *United States v. Stevens*, 978 F.2d 565, 570 (10th Cir. 1992).

Mr. McDowell's conclusory statements about his trial are not enough to satisfy the Rule 33 standard.  Moreover, they are an inaccurate reflection of the trial.  Mr. McDowell was not prohibited from calling witnesses.  He issued a subpoena to the Government attorney twice, but it was a subpoena duces tecum, to produce documents and not for trial testimony.  Mr. McDowell was similarly not prohibited from talking about the law or Title 21 as it applied to the facts of his case.  He was instructed not to argue to the jury that Title 21 was not a valid law because that would infringe upon the duties of the court in deciding legal matters.  These rulings were proper, and Mr. McDowell has failed to explain why they should result in a new trial.

## 6.    Venue

Mr. McDowell seeks to have his judgment arrested because of improper venue. He asserts that the Government failed to prove criminal activity in Kansas.  As with Mr.

McDowell's other arguments, this court has previously evaluated this issue and determined that venue is proper. (Doc. 565, at 5-8.)  Moreover, the jury was instructed as to venue.  Instruction number 25, which applied to all counts and all defendants, set forth the findings necessary for the jury to find venue.  The jury's guilty verdicts against Mr. McDowell signify that it found that venue was proper here in Kansas based on the acts of Mr. McDowell and his co-conspirators.

The Tenth Circuit's recent opinion in *United States v. Foy*, 641 F.3d 455 (10th Cir. 2011), however, merits a second look at the venue arguments.  *Foy* underscored the need to evaluate venue on each individual charge to ensure that that charge may be brought in the court.  *Foy*, 641 F.3d at 467.  As such, the court will again discuss facts supporting venue for each count charged against Mr. McDowell.

Venue in federal criminal cases is a question of fact which is part of the prosecution's case. *Wilkett v. United States*, 655 F.2d 1007, 1011 (10th Cir. 1981). Although venue is not a substantive element of a crime, it must be proven in every criminal case. *United States v. Kelly*, 535 F.3d 1229, 1233 (10th Cir. 2008). Unlike other facts in the prosecution's case, however, venue may be proven by mere preponderance of the evidence. *United States v. Byrne*, 171 F.3d 1231, 1234 (10th Cir. 1999).  "The standard of review for whether venue lies in a particular district is whether, viewing the evidence in the light most favorable to the Government and making all reasonable inferences and credibility choices in favor of the finder of fact, the Government proved by a preponderance of direct or circumstantial evidence that the crimes charged occurred

6

within the district." *United States v. Rinke*, 778 F.2d 581, 584 (10th Cir. 1985).

The Federal Rules of Criminal Procedure require that "unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. "[A] person [is to] be tried for an offense where that offense is committed," and "the site of a charged offense must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Cabrales*, 524 U.S. 1, 5 (1998) (quotation marks and citations omitted).

A.    Conspiracy

In a drug conspiracy case, venue as to prosecution of all members of the conspiracy "lies either in the jurisdiction in which the conspiratorial agreement was formed or in any jurisdiction in which an overt act in furtherance of the conspiracy was committed by any of the conspirators." *United States v. Rinke*, 778 F.2d 581, 584-85 (10th Cir. 1985) (quoting United States v. Smith, 692 F.2d 693, 697 (10th Cir. 1982)). In this case, a shipment of drugs was packaged in Arizona and sent via UPS through Kansas, where the drugs were intercepted by the DEA. This overt act—controlling the drugs as they passed through Kansas—is sufficient to establish venue here.

B.    Continuing Criminal Enterprise

Under 21 U.S.C. § 848(c), a person is subject to conviction for engaging in a continuing criminal enterprise if:

> (1) he violates any provision of [the federal drug laws] the punishment for which is a felony, and

7

(2) such violation is a part of a continuing series of violations of [the federal drug laws]

> (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

> (B) from which such person obtains substantial income or resources.

21 U.S.C. § 848(c).  Because a violation of this statute is a continuing offense, venue is proper "in any district in which such offense was begun, continued, or completed."  18 U.S.C. § 3237(a); *see also United States v. Smith*, slip op., 2011 WL 1367032, at *6 (10th Cir. Apr. 12, 2011); *United States v. Kramer*, 955 F.2d 479, 486 (7th Cir. 1992) ("Because the appellants engaged in a continuing offense, venue may be established by proof that any act in furtherance of the [continuing criminal enterprise] took place in the Southern District of Illinois.").

Here, the continuing criminal enterprise charge includes, among other things, the drug activities charged in the conspiracy count.  Given that venue was proper in Kansas for the conspiracy count, it is proper as well for the continuing criminal enterprise count. *See, e.g.*, *United States v. Fry*, 413 F. Supp. 1269, 1273-74 (E.D. Mich. 1976).

C.     Money Laundering and Conspiracy to Commit Money Laundering

Evidence at trial established that Mr. McDowell transferred money to a real estate closing company in Leawood, Kansas as part of his money laundering crimes and part of the larger conspiracy to commit money laundering.  That connection to the forum state

is sufficient to allow venue in this court.  *See, e.g.*, *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998) (holding that the venue for money laundering prosecution is determined by "the nature of the crime alleged and the location of the act or acts constituting it"); *Whitfield v. United States*, 543 U.S. 209, 218 (2005) (holding that venue for money laundering conspiracy is proper either in the district where the complete substantive money laundering offense had been accomplished or where an over act in furtherance of the conspiracy was committed).

    D.    Attempted Possession with Intent to Distribute Marijuana

    To obtain a conviction for attempt, the government must show that the defendant "possessed the requisite criminal intent, as well as the commission of an act which constitutes a substantial step towards commission of the substantive offense." *Foy*, 641 F.3d at 467 (citing *United States v. Ramirez*, 348 F.3d 1175, 1180 (10th Cir. 2003)). Actions of co-defendants cannot be imputed to prove venue for Mr. McDowell on the attempt charge; instead the Government must demonstrate that at least part of Mr. McDowell's activities constituting attempt occurred in Kansas. *Id.* at 467-68.

    The evidence at trial established that Mr. McDowell helped arrange and package drugs for shipment from Arizona.  The drugs were ultimately shipped to a UPS distribution hub in Kansas, where they were intercepted by DEA agents.  The Government maintains that during the transport of the drugs by UPS, including the time the drugs were in Kansas, Mr. McDowell retained constructive possession over them.

    Constructive possession exists when a person "knowingly has ownership,

9

dominion, or control over" the particular object. *United States v. Hager*, 969 F.2d 883, 888 (10th Cir. 1992); *see United States v. Mills*, 29 F.3d 545, 549 (10th Cir. 1994). In most cases, constructive possession over an object "may be inferred if a defendant had exclusive possession of the premises" where the object is found, but constructive possession may also be found in joint occupancy cases where the government demonstrates "some connection or nexus between the defendant and the firearm or other contraband." *United States v. Avery*, 295 F.3d 1158, 1177 (10th Cir. 2002) (citing *Mills*, 29 F.3d at 549); *see also United States v. Taylor*, 113 F.3d 1136, 1145 (10th Cir.1997) (noting that in joint occupancy constructive possession cases, "the government must present some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband") (internal quotation marks omitted). Similarly, "[a]n individual constructively possesses property when he knowingly holds the power and ability to exercise dominion and control over the property." *United States v. Carter*, 130 F.3d 1432, 1441 (10th Cir. 1997) (citing *United States v. Ruiz-Castro*, 92 F.3d 1519, 1531 (10th Cir. 1996)). Thus, constructive possession has also been defined as "an appreciable ability to guide the destiny of the drug." *Id.* (quotation marks and citation omitted). "Circumstantial evidence may establish constructive possession." *United States v. Hishaw*, 235 F.3d 565, 571 (10th Cir. 2000).

Evidence at trial showed that Mr. McDowell helped package the drugs in Arizona for shipment across the country. The evidence supports an inference that Mr. McDowell

was directing the shipment. As such, he would have been in control of the drugs while they were in transit, and thus he constructively possessed them at the time they were seized in Kansas. Venue is proper here on this count as well.

Moreover, Mr. McDowell was charged with aiding and abetting the attempted possession, and so even if he was not personally in constructive possession of the drugs as they traveled to Kansas, he could still be tried in Kansas, where the attempt crime took place. *United States v. Brazier*, 85 F.3d 641, *4 (10th Cir. 1996) (unpublished) (citing *United States v. Jackson*, 482 F.2d 1167, 1179 (10th Cir. 1973) ("Congress has declared that an aider and abettor may be punished as a principal, and hence he may be punished in the same district as the principal.")).

### 7.    Recusal

Mr. McDowell contends that the undersigned should recuse himself (or be impeached) from the case. A judge is required to recuse himself when "his impartiality might reasonably be questioned," or "he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a), (b)(1).

The court has already once rejected this argument (doc. 825), finding that Mr. McDowell could not satisfy the standard. Mr. McDowell merely disagreed with this court's rulings, and adverse rulings almost never provide a basis for recusal, nor do opinions formed or expressed by a judge based upon the record, "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir.

11

2010).

Mr. McDowell has added no new allegations to his motion for recusal. The request is again denied.


**IT IS THEREFORE ORDERED BY THE COURT** that the defendant's motions (docs. 990, 991, 1012, 1013, 1021, 1022, 1037, 1085, 1086, 1088, 1089, 1090, & 1115) are **denied**.


**IT IS SO ORDERED** this 29th day of July, 2011.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

12